**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ADMIRAL INSURANCE COMPANY,

     Plaintiff,

v.                                                                                    Case No. 1:25-cv-01006-JCH-GJF

LAURA GARCIA, PRO BILLIARDS, INC.,
and LEVON HOVHANNISYAN,

     Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO ABSTAIN

This matter is before the Court on Defendant Laura Garcia's Motion to Abstain or in the Alternative Motion to Dismiss, filed December 23, 2025. Doc. 5 ("Motion"). She moves the Court to refrain from considering Plaintiff Admiral Insurance Company's ("Admiral") complaint for a declaratory judgment while a related, ongoing suit proceeds in state court. *Id.* at 10 (referring to the Second Amended Complaint for Personal Injuries in Case Number D-202-CV-2024-00439 in the Second Judicial District of New Mexico (the "Underlying Lawsuit")); *see* Doc. 5-1 (copy of complaint in the Underlying Lawsuit). Having reviewed the parties' submissions and the applicable law, and being otherwise fully informed, the Court will **DENY** the Motion, Doc. 5, for the reasons below.

### BACKGROUND

In the Underlying Lawsuit, Garcia alleges that early on July 15, 2023, in Albuquerque, New Mexico, a patron of Defendant Pro Billiards, Inc. ("Pro Billiards") got behind the wheel of his vehicle while intoxicated and struck Garcia in the parking lot.[1] Doc. 1 at 3 ¶ 13, 4 ¶ 18. Garcia

---

[1] Pro Billiards operates a pool hall called Billiard Palace. *See* Doc. 1-3 at 1.

claims Pro Billiards contributed to the driver's intoxication by overserving him alcohol and not stopping his unruly behavior in the hours prior to the accident. *Id.* at 4 ¶ 18. Defendant Levon Hovhannisyan was the general manager of Pro Billiards at the time. *Id.* at 3 ¶ 14.

Admiral is Pro Billiards's general liability insurer. *Id.* at 1 ¶ 2. It issued a liability policy ("the Policy") for the period of April 3, 2023, until April 3, 2024. *See id.* at 5 ¶ 25; *see generally* Doc. 1-2 (copy of the Policy). The Policy includes a Commercial General Liability Coverage Form as well as a Liquor Liability Coverage Form. Doc. 1 at 5 ¶¶ 26, 27 (outlining various limits of liability depending on the type of occurrence and common cause).

Months after the incident, in January 2024, Garcia sued Pro Billiards and Hovhannisyan, amongst others, in New Mexico state court. *See generally* Doc. 5-1 (naming three other defendants not involved in the federal suit). Garcia alleges negligence and negligence per se against the state court defendants. *See id.* at 3-11 (outlining negligence per se claims for liquor liability, negligent hiring, training, and supervising, and premises liability). Admiral is defending Pro Billiards and Hovhannisyan pursuant to the reservation of rights within the Policy. Doc. 1 at 5 ¶ 29; *see* Doc. 1-3 at 2 (copy of the reservation of rights letter dated February 12, 2024). To date, the Underlying Lawsuit is ongoing. *See* Doc. 5 at 4.

In October 2025, Admiral filed the present declaratory judgment action seeking a declaration of its rights and obligations under the Policy. *See* Doc. 1 at 1, 12-13. In opposition, Garcia moves the Court to either abstain from ruling on the case or dismiss the suit entirely. Doc. 5 at 1.

## DISCUSSION

Pursuant to the Declaratory Judgment Act ("the Act"), a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." 28 U.S.C. § 2201(a). With the use of the term "may," the Act

confers district courts "unique and substantial discretion in determining whether to declare the

rights of litigants when duplicative state proceedings exist." *United States v. City of Las Cruces*,

289 F.3d 1170, 1179-80 (10th Cir. 2002) (citation modified). To streamline this consideration, the

Tenth Circuit outlined five factors in *State Farm Fire & Casualty Co. v. Mhoon*, to determine

whether a declaratory judgment action should proceed in federal court:

> [1] whether a declaratory action would settle the controversy; [2] whether it would
> serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of procedural fencing or
> to provide an arena for a race to res judicata; [4] whether use of a declaratory action
> would increase friction between our federal and state courts and improperly
> encroach upon state jurisdiction; and [5] whether there is an alternative remedy
> which is better or more effective.

31 F.3d 979, 983 (10th Cir. 1994) (text only). Garcia argues all five factors strongly favor

abstention, whereas Admiral contends the opposite. Doc. 5 at 4-10; Doc. 8 at 4-7. After considering

each *Mhoon* factor, the Court will exercise jurisdiction over Admiral's suit for the reasons

explained below.

I.    **Factors 1 and 2: Whether a Declaratory Action Will Settle the Controversy and Serve a Useful Purpose**

The first two *Mhoon* factors concern the utility of issuing a declaratory judgment. The

Court considers these factors together, keeping in mind that both are "designed to shed light on the

overall question of whether the controversy would be better settled in state court." *City of Las

Cruces*, 289 F.3d at 1187. Inherent in this analysis is an examination of "the degree of identity of

the parties and issues in the concurrent proceedings." *Id.* at 1183. Garcia asserts both factors

indicate the matter would be better settled in state court "because it is actively being litigated and

ruled on" and a federal declaratory judgment would not resolve Admiral's concerns.[2] Doc. 5 at 4. These factors indicate the opposite, however.

The Underlying Lawsuit is based on different factual and legal issues than those presented here. This suit centers on Admiral's financial duties and obligations under the Policy. *See* Doc. 1 at 1. In contrast, the Underlying Lawsuit is about the state court defendants' alleged negligence and negligence per se surrounding the accident. *See* Doc. 5-1 at 3-11. Simply, there is little overlap between the federal insurance contract claim and the state law tort claims.

Also, in the Underlying Lawsuit, there is no indication either party filed a claim for declaratory judgment pursuant to New Mexico's Declaratory Judgment Act, NMSA 1978, §§ 44-6-1-15. Consequently, the insurance coverage dispute will almost certainly not be resolved in state court. So, the resolution of Admiral's action will serve the additional purpose of clarifying the policy limits available to the insureds and aid the parties' settlement negotiations. *See, e.g.*, *Federated Mut. Ins. Co. v. Ever-Ready Oil Co.*, No. CIV 09-857, 2010 WL 11483797, at *2 (D.N.M. Mar. 3, 2010) (recommending the Court "retain jurisdiction of th[e] declaratory judgment action" that the insurer filed "following [an] impasse regarding the availability of policy limits for settlement purposes"), *adopted*, No. 09-CV-857, 2010 WL 11483949 (D.N.M. Apr. 5, 2010).

In all, the Court finds that this litigation will clarify the parties' legal relations under the Policy and afford relief. The first two *Mhoon* factors indicate the Court should exercise jurisdiction over Admiral's claim.

---

[2] Garcia also argues that because Pro Billiards purportedly failed to preserve crucial video evidence in the Underlying Lawsuit, sanctions in that case may be forthcoming and Admiral may be found vicariously liable. *See* Doc. 5 at 6-7. Yet, those speculative bad faith arguments do not appear to affect this case.

**II.        Factor 3: Whether a Declaratory Remedy is Being Used as Procedural Fencing**

As to whether Admiral pursues this case for "procedural fencing" or as a "race to res judicata," the Court considers if there are "some allegations of improper use of timing or procedure to manipulate the courts." *W. A. Ins. Co. v. Atyani*, 338 F. Supp. 3d 1227, 1233 (D.N.M. 2018). If so, this factor would weigh in favor of abstention. *See id.* In this way, Garcia argues Admiral is "attempting to manipulate the courts" by waiting two years to file this suit while the Underlying Lawsuit proceeded. Doc. 5 at 8. The Court finds no issue with the timing of the filing of this suit, however. There is no evidence that Admiral filed this case to avoid an adverse ruling in state court, much less manipulated the timing or procedure of the courts to its benefit. *See Atyani*, 338 F. Supp. 3d at 1233 ("[T]he order and timing of filing alone is not enough to show procedural fencing."). So, the third *Mhoon* factor weighs in favor of exercising jurisdiction.

**III.       Factors 4 and 5: Whether a Declaratory Action would Increase Friction between the State and Federal Courts and Whether there is an Alternative, Better Remedy**

Regarding the fourth and fifth *Mhoon* factors, a district court "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *St. Paul Fire & Marine Ins. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (citation modified). As to the fourth factor, Garcia argues the exercise of this Court's jurisdiction would "increase friction" with the state court. Doc. 5 at 8.

On the contrary, the Court finds that this case does not involve a factual question the state court is likely to decide that will create tension between the courts. *Cf. Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court *presenting the same issues*, not governed by federal law, *between the same parties*.") (emphasis added)). As noted, Admiral's case and the Underlying Lawsuit are markedly different

as to both the factual and legal issues presented. This suit concerns Admiral's liability limits under the Policy—meaning, the Court will have to construe the Policy's legal language regarding Admiral's contractual duties. These issues are not before the state court. Instead, the Underlying Lawsuit centers on Pro Billiards's, Hovhannisyan's, and the state court defendants' negligent conduct. Thus, the Court concludes issuing a declaratory judgment would not re-tread matters decided in the Underlying Lawsuit. So, the fourth factor weighs in favor of exercising jurisdiction.

As to the final *Mhoon* factor, Garcia contends the state court proceedings will offer an unequivocally better solution to the parties' dispute and Admiral could intervene in the Underlying Lawsuit. Doc. 5 at 9. While New Mexico's Declaratory Judgment Act provides Admiral a state forum to determine and declare its duties and rights, the current record does not show Admiral has decided to pursue such a claim. Nor is Admiral compelled to do so. In the end, "nothing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989). Accordingly, the final *Mhoon* factor counsels in favor of exercising jurisdiction.

### CONCLUSION

In sum, the Court "is not obliged to entertain every justiciable declaratory claim brought before it," but the Court chooses to do so here. *Mhoon*, 31 F.3d at 982. On balance, each *Mhoon* factor weighs in favor of the Court exercising its discretionary subject matter jurisdiction over Admiral's lawsuit. Therefore, for all the reasons explained above, it is hereby ordered that Garcia's Motion to Abstain or in the Alternative Motion to Dismiss, Doc. 5, is **DENIED**.

SENIOR UNITED STATES DISTRICT JUDGE

6